J-A19043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.H., a Minor, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.H., Birth Mother, | : | |
| | : | |
| Appellant | : | No. 81 WDA 2015 |

Appeal from the Order entered on December 16, 2014
in the Court of Common Pleas of Allegheny County,
Civil Division, No. TPR No. 116 of 2014

BEFORE: BENDER, P.J.E., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED SEPTEMBER 18, 2015**

D.H. ("Mother") appeals from the Order granting the Petition filed by the Allegheny County Office of Children, Youth and Families ("CYF"), and involuntarily terminating her parental rights to her son, M.H. ("Child") (born in October 2012), pursuant to section 2511(a)(2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[1] We affirm.

The trial court adequately and accurately set forth the factual background and procedural history of this appeal in its Opinion, which we incorporate herein by reference. **See** Trial Court Opinion, 3/11/15, at 2-5.

---

[1] In a separate Decree filed on December 16, 2014, the trial court involuntarily terminated the parental rights of D.M.D. ("Father") to Child pursuant to section 2511(a)(1), (2), (5), (8), and (b). Father has not challenged the termination of his parental rights, and is not a party to the instant appeal. **See** Trial Court Opinion, 3/11/15, at 2, n.1.

On July 15, 2014, CYF filed a Petition to involuntarily terminate Mother's parental rights to Child. At the termination hearing, CYF presented the following witnesses: Laverne Conley ("Conley"), a CYF caseworker assigned to the family, *see* N.T., 11/17/14, at 3-4; Virgil Pinkston, the Blair Foundation case worker who transported Child to visits with Mother since December of 2013, *see id.* at 44-45; Shannon Niederriter, another Blair Foundation worker who transported Child to visits with Mother, *see id.* at 50-51; and Neil Rosenblum, Ph.D. ("Dr. Rosenblum") the psychologist who conducted evaluations of Child with the foster parents, Mother, and Child with Mother, *see id.* at 57-62, 71, 110; CYF Exhibit 2. Mother testified on her own behalf, and additionally presented the testimony of an in-home service worker at Wesley Spectrum Services, Kimberly L. Thornton. *See id.* at 93. Finally, CYF re-called Conley as a witness. *See id.* at 104.

At a hearing on December 15, 2014, M.C. Henderson testified for CYF regarding Child's current status. N.T., 12/15/14, at 9. On December 16, 2014, the trial court entered its Order terminating Mother's parental rights under section 2511(a)(2), (5), (8), and (b). Mother timely filed a Notice of Appeal and her Concise Statement of Errors Complained of on Appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother presents the following claims four our review:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the [P]etition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(2), [(a)](5), and (a)(8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S.[A.] § 2511(b)?

3. Did the trial court abuse its discretion and commit an error of law by terminating Mother's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(8)[,] when such subsection was not plead by CYF?

Mother's Brief at 5.[2]

We review an appeal from the termination of parental rights in accordance with following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court[,] if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.* As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.* Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *Id.* at 1190.

---

[2] We observe that Mother framed the issues somewhat differently in her Concise Statement. Nevertheless, the issues are adequately preserved for our review.

> Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

The burden is upon the petitioner to prove, by clear and convincing evidence, that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court terminated Mother's parental rights under section 2511(a)(1), (2), (5), (8), and (b). In this appeal, Mother challenges the trial court's termination under each of these subsections. This Court may affirm a trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843

A.2d 380, 384 (Pa. Super. 2004) (*en banc*).[3]  Here, we focus our discussion solely on subsections (a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

---

[3] Mother's first and third issues challenge the trial court's termination pursuant to subsections (a)(5) and (8).  Because we affirm the trial court's termination pursuant to subsection (a)(2), we need not address Mother's first and third issues.  *See In re B.L.W.*, 843 A.2d at 384.  However, we are cognizant that CYF's Petition did not seek termination pursuant to subsection (a)(8), and there is no evidence supporting termination under that subsection.  *See* N.T., 12/15/14, at 4-6; *see also* Trial Court Opinion, 3/11/15, at 9-10.  As we affirm the trial court's termination pursuant to subsection (a)(2), we need not address the trial court's termination under subsection (a)(8).  *See In re B.L.W.*, 843 A.2d at 384.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (Pa. 1986) (quoting *In re: William L.*, 477 Pa. 322, 383 A.2d 1228, 1239 (Pa. 1978)).

*In re Adoption of S.P.*, 47 A.3d at 827.

- 6 -

A parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d at 337. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

Our review discloses that in its March 11, 2015 Opinion, the trial court properly discussed the evidence presented relevant to the requirements of section 2511(a)(2). *See* Trial Court Opinion, 3/11/15, at 6-7. The record includes ample, competent, clear and convincing evidence to support the trial court's determination that Mother has not demonstrated any ability to remedy the circumstances that led to Child's placement, nor is there any indication that she could remedy such circumstances in the foreseeable future, even with continued services in place. *See id.* We must defer to the trial judge's determination, as the factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *See In re Adoption of S.P.*, 47 A.3d at 826-27.

When the requirements of section 2511(a) have been satisfied, the reviewing court next reviews the record as to whether the requirements of section 2511(b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). The focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b), the focus is on the child. *Id.* at 1008.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In conducting a bonding analysis, the trial court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). As this Court has observed, no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Therefore, it is appropriate to consider a child's bond with a foster parent or parents. *See In re T.S.M.*, 71 A.3d at 268.

In its Opinion, the trial court explained its decision to terminate Mother's parental rights under section 2511(b), which we incorporate herein by reference. Trial Court Opinion, 3/11/15, at 10-11. Our careful review of the record discloses that the trial court properly discussed the evidence against the requirements of section 2511(b). *See id.* Our review discloses

sufficient evidence from which the trial court properly determined that Mother failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.-S.*, 958 A.2d 529, 534 (Pa. Super. 2008). As Mother did not put herself in a position to assume daily parenting responsibilities, she could not develop a real bond with Child. *See In re J.L.C.*, 837 A.2d at 1249. Additionally, as part of its bonding analysis, the trial court appropriately examined Child's relationship with his foster parents. Trial Court Opinion, 3/11/14, at 10-11; *see also In re T.S.M.*, 71 A.3d at 267–68 (stating that the court must consider whether the child has a bond with the foster parents).

The mere existence of a bond or attachment of Child to Mother does not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *In re: T.S.M.*, 71 A.3d at 267 (quoting *In re K.K.R.-S.*, 958 A.2d at 535). "The continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *In re T.S.M.*, 71 A.3d at 267 (citation omitted). Thus, we will not disturb the trial court's decision. *In re Adoption of S.P.*, 47 A.3d at 826-27.

While Mother may claim to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental

rights. ***In re Z.P.***, 994 A.2d at 1121. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." ***Id.*** at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of [her] child is converted, upon the failure to fulfill [] her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004).

Accordingly, we affirm the trial court's Order terminating Mother's parental rights to Child pursuant to section 2511(a)(2) and (b) of the Adoption Act.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2015

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## ORPHANS' COURT DIVISION

IN RE:

M.H.

a minor.

TPR No. 116 of 2014

Superior Court No.
81 WDA 2015

Copies by first class mail to:

Alexandra Gruskos, Esquire
Office of Children, Youth & Families
Legal Unit – Adoption Department
Fort Pitt Commons, Suite 101
445 Fort Pitt Boulevard
Pittsburgh, PA 15219

Raymond N. Sanchas, Esquire
Allegheny County Bar Foundation
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

Lynne Sherry, Esquire
Office of Conflict Counsel
Dependency Division
Allegheny Building, Suite 1300
429 Forbes Avenue
Pittsburgh, PA 15219

15 MAR 11 PM 1:44

FILED

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:

    M.H.                              TPR No. 116 of 2014

a minor

                                    Superior Court No.
                                    81 WDA 2015

**OPINION**

**K.R. MULLIGAN, J.**

D.H., Mother appeals my December 15, 2014 Order of Court terminating her parental rights[1].

M.H. was born on October 20, 2013, and came into the care of Allegheny County Children Youth and Families (CYF) on October 22, 2013. While at the hospital, Mother became agitated when hospital personnel questioned her on the whereabouts of her other children. Mother gave a variety of answers but never informed the staff that her previous children were adopted and that Mother's parental rights to these children had been terminated. Mother became angry after these questions, and following M.H.'s birth, Mother wanted to be discharged from the hospital with her child only 12 hours after M.H. had been born. Mother's erratic behavior prompted hospital staff to notify CYF, and CYF filed for an Emergency Custody Authorization on October 20, 2012. M.H. was adjudicated dependent on November 30, 2012. I found M.H. dependent pursuant to 42 Pa. C.S.A. §6302(1) and (10), with a finding of aggravated

---

[1] Following the same termination on December 15, 2014, the parental rights of D.D. (Father) were terminated pursuant to 23 Pa. C.S.A. §2511(a)(1)(2)(5)&(8). Father did not file an appeal.

2

circumstances[2]. Although my aggravated circumstances order directed that reasonable efforts continue, the November 30, 2012 Dependency Order also provided that if Mother were to not comply with the provisions of the order (cooperating with in-home services, obtaining mental health treatment) then CYF could be excused from continuing reasonable efforts return the child to Mother's care. On July 15, 2014, CYF filed a Petition for Involuntary Termination of Parental Rights (TPR) against Mother and Father of M.H. CYF sought termination of Mother's parental rights under 23 Pa.C.S.A. §2511 (a)(2) and (5).

At the November 17, 2014, termination hearing CYF caseworker LaVerne Conley testified to the history of the case. Caseworker Conley testified that D.H. has a history of refusing to cooperate with CYF. She also stated that Mother had been diagnosed with a mood disorder and mild mental retardation, and that she possesses limited understanding of parental functioning and maturity. Mother's parenting skills and mental health are of particular importance in this case because M.H. was born with sickle-cell anemia, and his illness would require Mother to recognize signs and symptoms of the disease which could necessitate medical attention. CYF developed a family service plan (FSP), setting goals for Mother which included complying with a mental health evaluation, following through with all treatment recommendations, showing an understanding of age appropriate behavior and expectations of M.H., maintaining relationships between herself and the child by maintaining consistent weekly visitations with M.H. and maintaining contact with CYF. D.H. was to attend the scheduled meetings and court hearings and to acquire and finish job training and/or find and hold a job. D.H. was to obtain employment and show an income sufficient to pay her rent and meet her monthly financial needs.

---

[2] The basis for the finding of aggravated circumstances was this Court's prior termination of D.H.'s parental rights to children M.R. and A.H. See *In Re: M.R., A.H. Minors*, affirmed at *1434* and *1435* WDA 2011.

3

Caseworker Conley testified that mother was able to acquire employment as a housekeeper and has maintained stable housing. Following over nine months outside of Mother's care, M.H. was returned to D.H.'s care in the summer of 2013. However, after only two months in Mother's care, M.H. was removed again in September 2013, this time because Mother was arrested for retail theft and M.H. was with her at the time of the theft. The police removed M.H. from Mother's care, and M.H. was returned to the prior foster home with foster parents who are prepared to adopt M.H. While the retail theft incident was ultimately reduced to summary charges, the progress that Mother had made with CYF was clearly blunted, as Caseworker Conley testified that after Mother's arrest her attitude toward CYF and progress toward her FSP goals were severely diminished. Mother was also incarcerated from February 2014 to May 2014 for a probation violation. This period of incarceration was a major setback as the visits between Mother and child were lessened, as did progress toward Mother's FSP goals following incarceration. Specifically, Caseworker Conley testified that Mother's mental health goal has not been satisfied, as since Mother's incarceration she was not able to provide the agency with the necessary verifications that her mental health was being appropriately treated. Caseworker Conley also stated that Mother's progress toward improving her parenting skills is also not moving at an adequate speed for the agency's satisfaction.

At the November 17, 2014, hearing, psychologist Dr. Neil Rosenblum testified to various evaluations that were performed in this case. Dr. Rosenblum evaluated D.H.'s interaction with foster parents and Mother. While Dr. Rosenblum stated that while Mother's interactions with M.H. were mostly positive, she did seem to be very erratic with M.H. and tended to move from one activity to another. Mother displayed some unusual obsessive/compulsive characteristics in terms of lining things up and getting upset that things didn't match. With respect to the foster

4

parents, Dr. Rosenblum observed the close bond between M.H. and foster parents. Dr. Rosenblum stated that M.H.'s primary attachment is unquestionably to the foster parents and in terms of the relationship between M.H. and his birth mother, M.H. does not view birth mother as a custodial parent figure.

Dr. Rosenblum's ultimate recommendation was adoption, primarily because M.H. has been with foster parents most of his life, and because birth mother has not significantly alleviated the problems or conditions which led to M.H.'s removal. He testified that it would harm M.H.'s emotional well-being if he were placed into D.H.'s care. Dr. Rosenblum stated that the only suitable permanency goal that would be consistent with M.H.'s needs and welfare would be a goal of adoption.

Following the hearing, I granted CYF's petition and found that CYF met its burden of proof by clear and convincing evidence that grounds for termination against Mother existed under 23 Pa. C.S.A. §2511(a) subsections (2), (5), and (8), and that termination met the needs and welfare of M.H. pursuant to 23 Pa.C.S.A §2511 (b).

Mother first avers in her Concise Statement of Matters Complained of on Appeal that I erred as a matter of law and/or abused my discretion in finding that CYF proved grounds for termination existed under 23 Pa. C.S.A. §2511(a). I found that CYF met its burden for termination by clear and convincing evidence under 23 Pa. C.S.A. §2511(a) subsections (2), (5), and (8).

23 Pa. C.S.A. §2511(a)(2) states that grounds for termination exist where "The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-

5

being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

CYF first became involved with D.H. in a prior case which resulted in the termination of Mother's parental rights to two other children. In this instance, M.H. was taken into CYF's care just two days after his birth due to Mother's bizarre and erratic behavior at the hospital. For a period of time, Mother was making gradual progress with her FSP goals and M.H. was returned to her care. Two months later, Mother was arrested for retail theft and endangerment of a child. Mother's arrest coupled with her history of mental health issues, lack of maturity, and poor parenting skills demonstrate her repeated incapacity and inability to parent M.H. Given M.H.'s unique medical needs, the lack of progress toward Mother's mental health and parenting goals are all the more troubling. M.H. is a child that needs parents who can recognize when he is in medical danger due to his sickle-cell anemia. Mother simply does not possess that understanding or those skills. Mother has a seemingly endless pattern of progress and then setbacks. Nowhere is this pattern more evident than in her arrest in 2013 following her reunification with M.H. Less than two months after being reunited with M.H. Mother is arrested for retail theft, and then she is subsequently incarcerated for three months for a probation violation. Also, per the testimony and reports of Dr. Rosenblum, Mother is still dealing with the same personality disorders which led to the removal of M.H. only two days after his birth. Therefore, there are distinct incapacities which Mother possesses (her inability to remain out of jail, her inability to remedy her mental health issues), and Mother's conduct has proven that she cannot fix these issues to a level where the child could ever be returned to her care. The child's unique medical condition would make the necessary changes Mother would need to make all the more substantial. For these reasons,

6

there are grounds for termination under 23 Pa. C.S.A. (a)(2) and Mother's first allegation of error is without merit.

Mother next alleges that grounds for termination do not exist under 23 Pa. C.S.A. §2511(a)(5). Section 5 of the Adoption Act requires for grounds to exist that "The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child."

Mother has a long-standing personality disorder which is not amenable to change. Additionally, even if her mental health could improve, it would take a significant amount of time. Given the amount of time that M.H. has been in foster care, it is unlikely that any amount of time would be reasonable to correct the conditions that led to M.H.'s removal. At the hearing on November 17, 2014, testimony was presented that M.H. had been in placement with CYF since their filing of an Emergency Custody Authorization on October 20, 2012. The only time period where the child was returned to Mother was for approximately two months in the summer of 2013, although the child was removed again on September 30, 2013. CYF filed its Petition for Termination on July 15, 2014, so the six month time period has clearly been satisfied.

Under Section 5 , the Court must decide whether the conditions which led to removal continue to exist. Here, the conditions which led to removal of M.H. were Mother's lack of parenting skills and inability to parent the child resulting from Mother's mental health concerns

7

and criminal history. It was evident that these conditions existed at the time the petition was filed and continued to exist as of the TPR hearing. Mother has made no recent progress with any of her FSP goals other than her ability to maintain a residence. Mother has not provided CYF with any documentation that she had completed programs for mental health or parenting and Dr. Rosenblum remains very concerned that she has developed the necessary skills to parent M.H. Therefore, the conditions which led to the removal of M.H. continue to exist.

For termination of parental rights under 23 Pa. C.S.A. §2511(a)(5), the final inquiry is whether the conditions which led to the removal or placement of the child can be remedied within a reasonable period of time. The fact that Mother failed to complete her FSP goals after M.H. was returned to her care between August 6, 2013, and September 28, 2013 demonstrate that these problems cannot be remedied quickly. Mother has a long history of mental illness which has led to poor parenting skills. Mother's problems cannot be remedied in a reasonable period of time, and for a child that has spent so much time in care and away from Mother, there is no reasonable period of time for Mother to correct these problems. As such, grounds for termination exist under Section 5 of the Adoption Act and Mother's allegation of error is without merit.

Mother also alleges that grounds for termination do not exist under Section 8 of the Adoption Act because CYF did not seek termination under Section 8 when the TPR petition was filed, and additionally because Mother alleges that the conditions which led to removal do not exist. 23 Pa. C.S.A. §2511(a)(8) provides that "The child has been removed from the care of the parents by the court or under voluntary agreement with an agency, 12 or more months have elapsed from the date of removal or placement, the conditions which led to the removal or

8

placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child."

At the time of the November TPR hearing, M.H. had been removed from Mother's care his entire life outside of two months in the summer of 2013. M.H.'s removal time from Mother far exceeded the 15 of 22 months as required by the Adoption and Safe Families Act, as he had been outside Mother's care for 19 of 21 months at the time the TPR petition was filed, and he had been outside of Mother's care for 23 of 25 months at the time of the TPR hearing. CYF did not plead Section 8 because at the time of filing of the July TPR petition he had been returned to the foster parents for 10 months following his reunification with Mother in August 2013. He had not been removed for 12 months. However, I found that a brief reunification should not preclude a Section 8 filing, as this child has been removed from Mother's care for 19 of 21 months at the time the petition was filed. To require that the 12 months be consecutive in a case like this would operate as a disincentive to CYF to recommend reunification. A larger issue exists that the time requirements for termination under the Adoption and Safe Families Act and 23 Pa.C.S.A. (a)(8) could be read to be inconsistent. However, a consistent reading of the two statutes together permits finding grounds for termination. The child has been removed from Mother's care for 19 months at the time of the filing of the TPR petition, it is simply that those 19 months were not consecutive, a requirement which is not found within Section 8 of the Adoption Act.[3] If anything, the removal in this case was from the foster parents, where the child had spent the vast majority of its life.

It is also true that I found grounds for a Section 8 termination even though it was not alleged in the CYF petition. I found that Mother was not prejudiced in any way by this finding

---

[3] I am not suggesting that the twelve month period of removal under Section 8 would be appropriate where children might have been removed from a parent's care sporadically over a period of many years.

9

since the critical element (the continuation of the conditions which led to the child's removal) is the same in Section 5 and Section 8. The difference in a Section 5 termination is that Mother could defend by asserting that the conditions which led to removal can be remedied in a reasonable period of time. Notwithstanding the legal question as to whether the twelve month period must be consecutive, the length of time the child has been in care is not in dispute.

For the grounds to exist under Section 8, the conditions which led to removal must continue to exist and 12 months must have elapsed since removal of the child. Here, as discussed *supra* in the Section 5 analysis, the conditions for removal clearly continue to exist. Mother is not in a position due to her mental health and poor parenting where she is able to parent this child. Therefore, the only hurdle to clear for grounds under Section 8 is whether the child has been removed for 12 months. Because M.H. had been removed for 19 of 21 months at the time of the TPR filing, I found that the 12 month requirement had been satisfied. As such, grounds exist for termination under Section 8 and Mother's allegation of error is without merit.

Mother's final allegation of error is that termination does not meet M.H.'s needs and welfare. Dr. Rosenblum testified that M.H.'s primary attachment is unquestionably to his foster parents. Dr. Rosenblum stressed that this child needs the permanency that an adoption will provide. The child has already experienced one disastrous return to Mother, where only two months after the return the child was with Mother when she was arrested for theft. The back and forth, without the permanency of adoption, can be quite harmful to M.H.'s development according to Dr. Rosenblum. Dr. Rosenblum's noted that M.H. has lived with foster parents most of his life, and because birth mother has not significantly alleviated the problems or conditions which led to M.H.'s removal, that it would be adverse to M.H.'s emotional well-being if Mother's parental rights were not terminated . The child is thriving in the foster parent's

10

home, and the foster parents have the ability to care for M.H's developmental and medical needs. While a bond may exist between M.H. and Mother, Dr. Rosenblum testified that the child does not view Mother as a custodial figure. Therefore, the severing of the bond will not have detrimental effects for M.H., instead quite the opposite. The severing of the bond will permit M.H. to be adopted and permanently be incorporated into the family that he views as his own. This termination clearly meets M.H.'s needs and welfare, and therefore Mother's allegation of error is without merit.

For the following reasons my December 15, 2014, order of court should be affirmed.

JUDGE KR MULLIGAN

Date Filed: March 12, 2015